**In re Nicholas and Barbara DiSALVO, Debtors.**

**CANANDAIGUA NATIONAL BANK & TRUST COMPANY, Plaintiff,**

v.

**Nicholas and Barbara DiSALVO, Defendants.**

Bankruptcy Nos. 84–20248 and 84–2067A.

United States Bankruptcy Court, W.D. New York.

July 11, 1985.

John J. Gilbert, Canandaigua, N.Y., for plaintiff.

Trudy A. Nowak, Rochester, N.Y., for defendants.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This is an objection to discharge filed by the Canandaigua National Bank & Trust Company, hereinafter referred to as Canan-

daigua, against the DiSalvos. The objection to discharge is based first upon a false financial statement and secondly upon a loss of assets or deficiency of assets to meet the debtors' liabilities which cannot be explained. A two day trial was held and the matter is now set for decision.

It is difficult to ascertain the facts in this particular case. The Plaintiff's attorney submitted his proof in such a disorganized haphazard fashion that it is difficult to tie it all together. But an effort has been made and from the Court's notes and the transcripts of the hearings, the following facts appear. Mr. DiSalvo had worked at Bausch & Lomb. He was discharged in late 1981. He was also president of a corporation known as MicPatnick's, Inc. which operated a restaurant at 66 Main Street, Holcomb, New York. The restaurant was known as the Village Landmark Inn. Mr. DiSalvo was known to the manager of Canandaigua's Holcomb branch bank. In the Fall of 1981, he appeared at the bank and asked for a loan. The bank loaned him $5,000 on November 30, 1981 and $5,000 on December 22, 1981. No financial statement was given at that time.

On April 16, 1982, Mr. DiSalvo gave a personal financial statement to Canandaigua. On April 19, 1982, MicPatnick's borrowed $10,000 from Canandaigua. A security agreement against MicPatnick's inventory, accounts receivable, equipment, machinery, tools, furniture furnishings, fixtures, and general intangibles was executed in the amount of $20,000 by MicPatnick's on August 3, 1982. Mr. DiSalvo personally guaranteed the $20,000 note. On October 15, 1982, another $10,000 note was given by Mr. DiSalvo to Canandaigua. The security for this note was to be a collateral security mortgage which was pending. The bank officer testified that he did not have a financial statement to rely on for this loan and that the loan was given for $10,000 cash. On March 18, 1983, a new note was given for $30,000 no fresh money was given and the note was signed by the husband, wife and MicPatnick's and no financial statement was presented at

that time. Also on February 4, 1983, a note was given by the husband, wife and MicPatnick's for $5,000 cash and again no financial statement was presented. Plaintiff's Exhibit 10 which was not originally received but was later allowed was another financial statement received in the Fall of 1983. But the bank officer who testified had no recollection as to how Canandaigua obtained the statement and he did not rely upon it in giving any of the loans.

It also appears from the transcript and the Court's notes that Mr. DiSalvo accounted for all of the assets which the Plaintiff tried to prove had not been accounted for.

■ Analyzing the evidence it appears that the money borrowed by DiSalvo and MicPatnick's from late 1981 to early 1983 was borrowed as follows. Ten thousand dollars was loaned to Nicholas DiSalvo before any financial statements were filed. An additional $10,000 was loaned to MicPatnick's after Canandaigua received the financial statement setting forth DiSalvo's personal net worth on April 16, 1982. It appears from the testimony that the debtor, Nicholas DiSalvo, believed the statement to be true at the time that he made it. There are no significant omissions from that statement. The debtor did value part of the real estate that he owned at a higher value than it was later sold for but the sale was made at the time he feared tax foreclosure on the property and the sale price should not be a criteria for the value of that particular piece of property. There were no other significant discrepancies in that financial statement. The only other financial statement which the bank had admitted was one which reached the bank after all the transactions were completed and could not have been relied upon.

Therefore, the Plaintiff has failed to sustain their burden of proof, that the debtor knowingly filed a false financial statement, which the bank relied upon to their detriment and hence their action on the false financial statement does not lie.

■ The other cause of action was predicated upon 11 U.S.C. § 727(a)(5) of the Code that allows the Court to grant the debtor a discharge unless the debtor has failed to explain satisfactorily, any loss of assets or deficiency of assets to meet the debtor's liabilities. In the case at bar, the Plaintiff went into every dollar that the debtor had received and every bit of property owned by the debtor prior to the filing of the petition in bankruptcy. The debtor accounted for the monies and property that he had owned, at great length. This is evidence by literally hundreds of check stubs which the debtor produced and introduced into evidence. It would be counter productive to go into more detail. It is sufficient to say that the debtor was convincing in showing what had happened to all of his property, therefore, this action was not proven.

It is not enough for the Plaintiff to suspect and plead skulduggery. Proof in an organized, clear, concise, convincing manner must be submitted by the Plaintiff showing it. An unprepared, haphazard showing of unrelated facts, presented in a disorganized manner does little to prove a cause of action.

Therefore, the debtors are entitled to their discharge and the objection to discharge filed by Canandaigua is denied.